633 So.2d 861 (1994)
Jimmy Dale DUBROC, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE CO., et al., Defendants-Appellees.
No. 93-780.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
Opinion Granting Rehearing April 7, 1994.
William Stafford Neblett, Alexandria, for Jimmy Dale Dubroc.
Raymond L. Brown Jr., Alexandria, for Allstate Ins. Co., et al.
Thomas Joseph DeJean, Opelousas, for Connie Perez.
Rhett M. Powers, Kenner, Vincent Ross Cicardo, Alexandria, for Jennifer Brandy Holt and Automotive Cas.
Michael Moyse Wahlder, Alexandria, for Creecy, Marlon.
B. Scott Cowart, Albin Alexandre Provosty, Alexandria, for William Earl Hilton Sheriff.
Richard Eric Starling Jr., Pineville, for Kay Jones and Ray Neff.
Before DOUCET, YELVERTON and SAUNDERS, JJ.
YELVERTON, Judge.
These are two consolidated cases. The two plaintiffs were injured in a car wreck. They sued for damages. One of the defendants was Sheriff William Earl Hilton of Rapides Parish. The Sheriff filed an exception of no cause of action. It was granted and the suit against the Sheriff dismissed. The plaintiffs appealed. We affirm, but remand *862 to allow the plaintiffs, if they can, to amend to state a cause of action.
The plaintiffs were Jimmy Dubroc in one case, and Connie Perez, on behalf of her interdicted daughter Melinda Deville, in the other. The following facts were alleged in Perez's and Dubroc's petitions. On September 21, 1991, Jennifer B. Holt was driving a vehicle proceeding east on Highway 28 in Alexandria. Five people were riding with her. Jimmy Dubroc and Melinda Deville Perez were passengers, along with Ray Neff and Kay Jones. Chad Coleman was the fifth passenger. They were taking Coleman to the hospital because he had a knife cut on his hand. On the way, Holt stopped the vehicle because Coleman needed to throw up. While the Holt car was stopped, a Rapides Parish Deputy Sheriff pulled over next to it to see what was going on. He saw Coleman's injury. The deputy told Jones that they should seek immediate medical treatment. Neff requested that the deputy give them an escort to the hospital. This request was refused.
Holt continued towards the hospital. In less than a mile, at the intersection of Highway 28 West and MacArthur Drive, Holt's vehicle collided with Creecy's vehicle. Dubroc and the Perez girl were injured. They were the people who sued the Sheriff.
Perez and Dubroc allege that the accident was caused by the negligence or fault of Sheriff William Earl Hilton, through his deputy, in the following ways:
1. Breached his duty to provide assistance in the form of an escort to the Holt vehicle;
2. Failure to appreciate the severe injuries of Coleman;
3. Failure to call an ambulance to transport Coleman to the hospital, thereby reducing risk of injury to occupants of the Holt vehicle;
4. Failure to personally transport Coleman to the hospital, thereby reducing risk of injury to occupants of the Holt vehicle;
5. Failure to follow police procedure in emergency situations;
6. Breached his duty to provide medical assistance;
7. Breached his duty to insure that the occupants of the Holt vehicle had a safe means of transportation to the hospital.
The Sheriff filed an exception of no cause of action.

NO CAUSE OF ACTION
Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition and is triable on the face of the papers; for the purpose of determining the issues raised by this exception, the well pleaded facts in the petition and any annexed documents must be accepted as true. Kuebler v. Martin, 578 So.2d 113 (La. 1991).
In addressing the exceptions, we must keep in mind that Coleman, the one with the cut hand, is not a plaintiff in this case. Nor is Holt, who was driving the car. The plaintiffs are two of the remaining four passengers in the car. We are not concerned about the duty to protect Coleman as to his cut hand, or any duty to protect the driver Holt from her own driving. We are concerned only with the duty to the passengers as affected by the likelihood that Holt's driving would endanger them.
In Louisiana the courts approach the question of responsibility of one party for the tort of another which injures a third party through the traditional duty-risk approach and the existence of a special relationship. The duty-risk approach consists of the well understood factors of cause-in-fact, existence of duty, breach of duty and inclusion within scope of duty. Berry v. State of Louisiana through DHHR, 625 So.2d 600 (92-1479, La. App. 3d Cir.1993).
We have been unable to find statutorily prescribed standards of conduct of a sheriff's officer in such circumstances as those presently alleged. La. Constitution 1974 art. 5, *863 § 27 provides that sheriffs outside the parish of Orleans shall be the chief law enforcement officer in the parish. They are invested by law with authority to direct, control or regulate traffic by La.R.S. 32:5. Thus, the deputy was empowered to investigate when he saw a car stopped with several people in it and one of them throwing up on the side of the road.
A sheriff may, but is not required to, operate and maintain an ambulance, emergency rescue service, and emergency disaster service within the parish. La.R.S. 33:1437.1. Therefore, we can conclude that the sheriff's deputy had the authority to do the things that the plaintiffs alleged he should have done: he could have called an ambulance; he could have provided an escort; he could have put Coleman in his own car and taken him to the hospital. We can also assume that had he provided an escort, Holt would probably not have gotten in a wreck. Or, had the deputy taken Coleman in his own car or called an ambulance, Holt might well have turned around and gone home and avoided the wreck. We cannot say that the petition failed to allege cause in fact.
Concerning duty and scope of duty, the Louisiana Supreme Court recently observed that "where the alleged wrongful conduct of the defendant is a failure to act or `nonfeasance', courts have found it necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant." Fox v. Board of Supervisors of Louisiana State University, 576 So.2d 978 (La.1991).
The duty of law enforcement officers has been established jurisprudentially and is essentially that of maintaining peace and order, preventing and detecting crime, and enforcing the law. Zeagler v. Town of Jena, 556 So.2d 978, 980-81 (La.App. 3d Cir.), writ denied, 560 So.2d 14 (La.1990). This case explains:
This duty is one owed to the public generally but may be transformed into a duty owed to an individual where a personal or individual relationship (one-to-one relationship) arises between the police officer and an individual through closeness in proximity or time. Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1 Cir. 1986). This distinction between a policeman's duty to the general public and his duty to a specific individual was clearly set forth in Tompkins v. Kenner Police Dept., 402 So.2d 276 (La.App. 4 Cir.1981), as follows:
"[A] local government cannot be held liable in cases of failure to enforce a protective regulation when the injuries resulting therefrom are not readily foreseeable and a substantial time passes between the negligent actions and the injuries sustained by plaintiff. However, in enforcement of a governmental regulation which, through closeness in proximity or time, results in a one-to-one relationship between the police officer and the injured party, the police officer ceases to act only for the public good and at that moment becomes obligated to the individual to conduct himself in such a way as not to cause him unnecessary injury." Tompkins v. Kenner Police Dept., 402 So.2d 276, at page 280 (La.App. 4 Cir.1981).
The Louisiana Supreme Court carefully examined the "public duty doctrine" in the case of Stewart v. Schmieder, 386 So.2d 1351 (La.1980). In that case, the Court defined the "public duty doctrine", citing Cooley On Torts, by saying:
"[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. `The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.'" Stewart *864 v. Schmieder, 386 So.2d 1351, at page 1357 (La.1980), quoting Cooley On Torts, 4th Ed. § 300 at page 385.
The Sheriff in this case is not liable to the plaintiffs unless the policeman's general duty to the public was transformed into a duty owed to the plaintiffs personally, due to the establishment of a one-to-one relationship through closeness in proximity or time.
The allegations, especially Numbers 2, 3, 4 and 6 above quoted, are addressed not to a duty of the deputy to take care of Coleman, but a duty to get Coleman out of Holt's car so Holt would drive safely. In other words, the allegations implicitly declare that Coleman's presence made Holt an unsafe driver. But there is not a single allegation to this effect in the petitions. In Fowler v. Roberts, 556 So.2d 1 (La.1989), the state was held liable because it negligently issued a driver's license to a seizure-prone driver, who had a seizure and had a wreck. There is not a single allegation in the petitions before us in this case that Holt was accident-prone for any reason, or that the deputy had any reason to believe that her driving was adversely affected by the presence of a passenger going to a hospital for a non-life-threatening emergency injury.
The plaintiffs argue in brief that when the deputy saw the injured party and the seriousness of his injury, that alone established the one-to-one relationship necessary for a possible finding of negligence on the part of the Sheriff. They contend that the deputy further injected himself into the situation and gave rise to a duty, on his part, when he informed the occupants of the vehicle that they needed to get help for the injured person immediately. They argue that he knew, or should have known, that this would instill an urgency in the driver of the Holt vehicle causing her to forsake her normal caution. They claim it was incumbent upon the deputy to make sure that the occupants of the vehicle travelled in safety.
The one-to-one relationship between a police officer and the injured party was discussed in Tompkins v. Kenner Police Dept., 402 So.2d 276 (La.App. 4th Cir.1981) as follows:
We do not doubt a local government cannot be held liable in cases of failure to enforce a protective regulation when the injuries resulting therefrom are not readily foreseeable and a substantial time passes between the negligent actions and the injuries sustained by a plaintiff. However, in enforcement of a governmental regulation which, through closeness in proximity or time, results in a one-to-one relationship between the police officer and the injured party, the police officer ceases to act only for the public good and at that moment becomes obligated to the individual to conduct himself in such a way as not to cause him unnecessary injury.
In Tompkins, a police officer took measures to investigate the scene of an accident. He was told by the injured operator of a motorcycle to attend to his friend at the side of the road. The officer took no measures whatever to render or obtain medical help for the injured person, who eventually died from lack of medical treatment. The court found that the officer had established a one-to-one relationship with the injured person and found under those facts that the petition alleged a violation of a duty to a specific individual.
When determining the existence or scope of a duty, a court should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident. Persilver v. Louisiana Dept. of Transp., 592 So.2d 1344 (La.App. 1st Cir.1991).
In the present case there was no one-to-one duty established between the deputy and the two suing passengers in the car. There may have been a one-to-one relationship established with Coleman, and a duty owed to him, but it is not Coleman who is complaining in this case. No such relationship was established with the others in the car. The fact that the Holt vehicle would later be involved in an accident as a result of a cut on Coleman's hand is not readily foreseeable. The deputy's contact with the Holt vehicle gave no indication that there was a higher than normal risk it would be involved in an accident a mile down the road. It does not *865 follow that an injury on a passenger's hand increases the risk of an accident involving the vehicle in which he is riding. It would be too expensive to require police officers to escort every car or call an ambulance for an injury to someone which is not life threatening. It is obvious that Coleman could be transported by car because this is what they were doing before the deputy checked on them. The car continued down the road towards the hospital the same way the car was going before the deputy stopped to check on it. We can not hold police officers blanketly liable for the actions of car drivers in driving their vehicles. Even if the deputy had a duty to investigate a car stopped on the highway, the duty did not encompass the risk that the car would later be involved in an accident down the road. Absent some manifest driver disability or impairment, we do not require police officers to anticipate the driving proclivities of people on the highways. To illustrate, suppose the following example: A driver on a public highway is stopped for speeding. He had a passenger. The driver explains to the officer that he was speeding because he was in a hurry to visit a sick friend. The officer issues a speeding ticket and lets the driver go. A mile down the road the driver speeds again, has a wreck and injures his passenger. Has the officer violated a duty owed to the passenger to protect him from the further speeding violation? The question answers itself. Absent some special circumstance, such as an observably drunk driver, the officer owes no duty to the passenger to protect him from the consequences of a later speeding violation by the driver in this example.
There were no special circumstances in the present case creating a one-to-one relationship between the deputy and the two injured plaintiff-passengers. There were no allegations in the petitions that Holt had been driving irresponsibly up to the point where she stopped to let Coleman throw up. The mere fact that the deputy called Holt's attention to what she already knewthat she had a passenger who needed taking to the hospitaladded no new dimension to the urgency of the occasion. Certainly, that comment by the deputy would not cause a reasonably prudent driver to suffer a panicked loss of control.
For these reasons we find the trial court was correct in granting Sheriff Hilton's exception of no cause of action. However, the trial judge gave the plaintiffs no opportunity to amend. La.C.C.P. art. 934.
We cannot say that there is no conceivable possibility that the petition could be amended to state a cause of action against the Sheriff. Persilver v. Louisiana Dept. of Transp., 592 So.2d 1344, 1352 (La.App. 1st Cir.1991). We accordingly remand to the trial court with the instruction that an order be issued to Jimmy Dale Dubroc to amend his petition to state a cause of action against the Sheriff, if he can, within a delay deemed reasonable by the trial court. The plaintiff-appellant will pay the costs of this appeal.
The above reasons for judgment apply to both these consolidated cases. A separate judgment is being rendered in Perez v. Holt, 633 So.2d 869 (La.App. 3d Cir.1994) (93-781).
AFFIRMED AND REMANDED.

ON REHEARING
PER CURIAM.
In our original opinion we affirmed the trial court's ruling maintaining the exception of no cause of action, but we remanded for the purpose of allowing the plaintiffs to amend their petitions, pursuant to La.Code Civ.P. art. 934. We now grant the rehearing application of William Earl Hinton, Sheriff of Rapides Parish, and delete the remand from our judgments in these consolidated cases.
Two exceptions of no cause of action were filed successively in this case. The first was maintained on December 14, 1992, and the plaintiffs were ordered to amend to remove the grounds of the exception within 10 days; otherwise, their suits would be dismissed.
The plaintiffs amended, and an exception of no cause of action was then filed to the amended petitions. This exception, too, was maintained. The judgment rendered on that exception did not allow further curative efforts. This is the judgment on appeal. In effect, the second judgment maintaining the exception of no cause of action was a finding *866 that the plaintiffs failed to remove the grounds of the objection. Article 934 mandates dismissal.
We affirm the judgment of the trial court.